**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **AMBER HERLEIN,    as Personal Representative of the Estate of Decedent SHANDRA EISENGA,** )<br>)<br>) | ) |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **ELUTIA, INC. F/K/A AZIYO BIOLOGICS, INC.,** )<br>) | |
| ) | |
| **and** ) | |
| ) | |
| **DCI DONOR SERVICES, INC. D/K/A TENNESSEE DONOR SERVICES,** )<br>) | |
| ) | |
| **and** ) | |
| ) | |
| **DOES 1-10,** ) | |
| ) | |
| **Defendants.** ) | |

Timothy Holland (P66218)
Jason Hodge (P84454)
Rick Houghton (P82056)
Brandon Hewitt (P70820)
MICHIGAN SLIP AND FALL LAWYERS
*Attorneys for Plaintiff*
30101 Northwestern Hwy., Suite 150
Farmington Hills, MI 48334
(248) 939-8130 / Fax: (248) 254-8076
tholland@Falllaw.com
jhodge@Falllaw.com
rhoughton@falllaw.com
bhewitt@falllaw.com

*Michigan Slip and Fall Lawyers, 30101 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130*

## COMPLAINT AND JURY DEMAND

*There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.*

COMES NOW Plaintiff, Amber Heirlein, as Personal Representative of the Estate of Decedent Shandra Eisenga, by counsel, and for her Complaint against Defendants Elutia, Inc. f/k/a Azyio Biologics, Inc., DCI Donor Services, Inc. D/B/A Tennessee Donor Services, and DOES 1-10, alleges as follows:

## I. **INTRODUCTION**

1.      This action seeks to recover damages for the wrongful death of Decedent Shandra Eisenga ("Decedent"), which was substantially, directly, and proximately caused by the wrongful conduct of ELUTIA, INC. F/K/A AZIYO BIOLOGICS, INC. and DCI DONOR SERVICES, INC. D/B/A TENESSESSEE DONOR SERVICES in connection with the research, testing, design, development, manufacture, harvesting, procurement, production, inspection, labeling, advertisement, marketing, promotion, sale, and distribution of ViBone Viable Bone Matrix ("ViBone'').

## II. **PARTIES**

2.      Amber Herlein was appointed as Personal Representative of the Estate of Decedent Shandra Eisenga on October 4, 2023 by the probate court of Wexford County, Michigan in Case #2023-1240-DE.  As such, she is a proper party to bring this action pursuant to MCL600.2922(2).

3.      Plaintiff Amber Herlein, as the Personal Representative of the Estate of Decedent Shandra Eisenga, ("Plaintiff") is and at all relevant times was an adult resident of the State of Michigan, residing in Manton, Michigan.

4.      At the time of Decedent's death, Plaintiff was Decedent's natural daughter.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

5.      Defendant ELUTIA, INC. F/K/A AZIYO BIOLOGICS, INC. ("Elutia") is a Delaware corporation, having a principal place of business located at 12510 Prosperity Drive, Suite 370, Silver Spring, Maryland 20904.  Defendant Elutia does business throughout the United States, including conducting regular business in the State of Michigan.

6.      Defendant Elutia sells a variety of medical products, including implantable orthopedic and spinal repair products, and soft tissue reconstruction products.

7.      Upon information and belief, Defendant Elutia developed, manufactured, marketed, promoted, distributed, supplied and/or sold ViBone which was implanted into Decedent, and which is the subject of this Complaint.

8.      Defendant DCI DONOR SERVICES, INC. D/B/A TENNESSEE DONOR SERVICES ("DCI") is a Tennessee corporation, having a principal place of business located at 566 Mainstream Dr., Ste. 300, Nashville, TN 37288.  Defendant DCI is the parent company of TENNESSEE DONOR SERVICES and does business throughout the United States, including conducting regular business in the State of Michigan.

9.      Defendant DCI is engaged in the business of locating, properly identifying, qualifying, procuring, harvesting, and recovering parts of human cadavers that should at all times qualify for recovery, processing, distribution and ultimately used in a wide variety of surgical procedures where human bone, tissue, etc. can be appropriately and safely utilized.

10.     Upon information and belief.  Defendant DCI harvested, procured, recovered, processed, supplied and/or sold human tissue for use in ViBone which was implanted into Decedent in the State of Michigan, and which is the subject of this Complaint.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

11.    Defendants, at all times relevant to this lawsuit, placed harvested human tissue or ViBone into the stream of commerce; specifically manufactured, developed, designed, marketed, distributed, promoted, supplied and/or otherwise sold (directly or indirectly) human tissue or ViBone to various locations for use in surgeries requiring bone grafting, including to University of Michigan Health-West in Wyoming, Michigan where it was surgically implanted into Decedent, causing her to suffer harm and death as described herein.

12.    Defendants Does 1-10 were responsible in some manner for the injuries and damages caused to Decedent, but their identities and/or roles are not yet known.

13.    When reference is made in this Complaint to any act or omission of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such acts or omissions, or failed to adequately supervise, train, or property control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the course and scope of their duties, employment or agency.

**III. JURISDICTION STATEMENT AND VENUE**

14.    This claim arises out of a spinal operation performed on Decedent at University of Michigan-West in Wyoming, Michigan on April 19, 2023, in which ViBone was surgically implanted into her body.

15.    This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this case is a civil action where the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and is between citizens of different states.

16.    Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) since Defendants transact business within this judicial district and a substantial part of the events giving rise to this claim occurred within this judicial district.

17.    At all times relevant to this matter, the Defendants have been engaged either directly or indirectly, in the business of acquiring, supplying, manufacturing, testing, marketing, selling, and/or distributing ViBone and/or the human tissue in ViBone within the State of Michigan, with a reasonable expectation that the product would be used in the State of Michigan, and thus regularly solicited or transacted business in this State.  A such, this Court has personal jurisdiction over all Defendants because they transact business in this state and sold products intended to be used in patients in Michigan such as Decedent.

## IV. <u>FACTUAL ALLEGATIONS</u>

### A.  ViBone  Viable  Bone  Matrix

18.    ViBone contains human tissue consisting of cryopreserved bone matrix that is combined with at least one other article.  It is engineered to be like natural tissue and is used as a bone void filler in various orthopedic and spinal procedures to support bone repair.

19.    ViBone is a product that was developed by Azyio and is characterized as a Viable Bone Matrix ("VBM").

Michigan Slip and Fall Lawyers, 30101 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

20.    Defendant Elutia represented that ViBone was classified by the FDA as a human cell, tissue, cellular or tissue-based product (HCT/P) pursuant to 21 CFR Part 1271.

21.    In a June 28, 2024 Warning Letter, the FDA advised Defendant Elutia that VBM did not meet the criteria of 21 CFR 1210.10(a)(3) because the VBM was a combination of bone and another article.   Furthermore, VBM did not meet the criteria for 21 CFR 1271.l0(a)(l) because it failed to meet the minimum manipulation requirements for structural tissue.

22.    The ViBone package insert states that "THIS PRODUCT IS MANUFACTURED FROM DONATED HUMAN TISSUE".   The exact formulation of ViBone is closely held by Defendants.

23.    The ViBone product is accompanied by a package insert containing Instructions for Use ("IFU") which includes the following:

ViBone is a Human Cellular and Tissue Based Product (HCT/P) per 21 CFR Part 1271;

ViBone was prepared from a donor determined to be eligible by the Medical Director of Aziyo or physician designee based on the result of screening and testing;

Donor eligibility determination was made by Aziyo Biologics in compliance with U.S. FDA regulations (21 CFR 1270 and 1271) and American Association of Tissue Banks (AATB) Standards;

ViBone is preserved in 5% dimethyl sulfoxide (DMSO) in a 0.9% sodium chloride solution.   Povidone iodine, Dulbecco's phosphate buffered saline, sodium phosphate, hydrochloric acid and hydrogen peroxide are all used for processing, preservation and storage of the allograft and trace amounts of these solutions may be present in the product.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

24.    At all times relevant, Defendants designed, developed, manufactured, marketed, distributed and/or sold ViBone and the human tissue used in ViBone.

25.    Defendant Elutia contractually retained Defendant DCI to, among other things, procure and provide the cadaveric tissue it used to manufacture ViBone.

26.    The contaminated cadaveric tissue Defendant Elutia used to manufacture the defective lot of ViBone was initially procured by Tennessee Donor Services, a division of Defendant DCI, in furtherance of Defendant DCI's contract with Defendant Elutia.

27.    Defendant Elutia represented and warranted that each "donor'' cadaver is screened and tested by Elutia's Medical Director or physician designee.  Defendant Elutia further represented and warranted that said screening and testing includes "[c]communicable disease testing performed by a laboratory registered with [The Food and Drug Administration "FDA''] to perform such testing on human specimens ... and [the donor] was found to be negative or non-reactive for 'HIV, hepatitis B, hepatitis C, and syphilis.'" Defendant Elutia further represented and warranted that "Donor eligibility determination was made by Aziyo Biologics in compliance with U.S. FDA regulations (21 CFR 1270 and 1271) and American Association of Tissue Banks (AATB*)* Standards."

28.    Defendant DCI represented and warranted that "Quality standards are established to meet or exceed the regulations and guidelines of the U.S. Food and Drug Administration, the American Association of Tissue Banks, and individual state health departments" and that "DCI Donor Services maintains intimate control of donor selection and procurement."

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

29.    Defendant Elutia did not expressly warn users, customers, physicians or the medical community at large that ViBone could transmit tuberculosis.

30.    As of August 27, 2007, sepsis was considered to be a relevant communicable disease pursuant to 21 CFR 1271.3(r) and in the FDA's *Guidance for Industry, Eligibility Determination for Donors of Human Cells, Tissues, and Cellular and Tissue-Based Products (HCT/P's)*, August 2007, it advised that any deceased donors specifically diagnosed with certain conditions, including sepsis, in the medical records during a hospital stay immediately preceding death, should be determined ineligible for donation.  Similarly, since at least 2017, the *American Association of Tissue Banks (AATB) Standards for Tissue Banking* required the rejection of tissue if there was evidence of sepsis observed in any available record.  See *American Association of Tissue Banks (AATB) Standards for Tissue Banking*, DR.120,2017.

31.    At all times relevant, Defendants relied upon Defendant Elutia's SOP-0006 to determine donor eligibility, which included accepting donors that had been diagnosed with sepsis during the donor's terminal hospitalization with the use of a sepsis algorithm.

32.    Defendants had been utilizing SOP-0006 prior to July 2021 when there was another outbreak of tuberculosis from a donor with signs of sepsis during his terminal hospitalization.

33.    During an FDA inspection of Defendant Elutia that was conducted between September 5, 2023 and September 25, 2023, the FDA made multiple observations including: 1) noting that between June 1, 2022 and January 31, 2023, multiple donors with a sepsis

diagnosis were deemed eligible for donation, 2) that SOP-0006 was not designed to ensure compliance with donor eligibility requirements, 3) complete set of medical records were not made available to the medical director prior to donor eligibility determination when multiple donors had a recent diagnosis of sepsis, and 4) personnel authorized to perform designated functions related to donor eligibility determinations were not qualified through appropriate medical training to review clinical evidence consistent with the risks of sepsis.

34.    During an FDA inspection of Defendant DCI that was conducted between September 5, 2023 and September 29, 2023, the FDA made multiple observations including: 1) that Defendant DCI failed to verify that the donor screening procedures it was utilizing were consistent with current donor eligibility requirements pertaining to donors diagnosed with sepsis or clinical evidence of infection, 2) that between January 2, 2022 and September 5, 2023, Defendant DCI screened, determined to be suitable for recovery, and then recovered and released for shipment under quarantine, approximately 99 donors diagnosed with sepsis in medical records during a hospital stay immediately preceding death.

35.    Defendants did not expressly warn users, customers, physicians or the medical community that their Donor Selection Standard Operating Procedures were in violation of AATB standards and FDA guidelines.

36.    Defendants did not expressly warn users, customers, physicians or the medical community that they accepted donors with evidence of sepsis during terminal hospitalization.

37.    Defendant Elutia manufactured ViBone at its a facility located at 880 Harbour Way S., Ste. 100, Richmond, CA 94808 ("California Facility") and distributed the product from said facility.

38.    In furtherance of its contract with Defendant Elutia, Defendant DCI delivered the contaminated cadaveric tissue Defendant Elutia used to manufacture the defective lot of ViBone.

39.    Defendant DCI knew or reasonably should have known that the defective lot of ViBone manufactured from the contaminated cadaveric tissue would be distributed to medical facilities and medical providers throughout the United States, including Michigan.

40.    The ViBone used in Decedent's surgery was manufactured using human tissue from a single donor by Defendant DCI.

41.    Upon information and belief, the single donor whose tissue was recovered by Defendant DCI and then incorporated into ViBone and sold by Defendant Elutia had a tuberculosis infection prior to his/her death and had clear signs and symptoms at the time of death of an infectious etiology.

42.    Despite the donor at issue having a diagnosis of sepsis during his hospital stay immediately preceding death, the donor was cleared and accepted for harvesting by Defendants.

43.    On or about July 7, 2023, The Centers for Disease Control ("CDC") was notified by one state and on July 11, 2023 by another state about two patients who developed

tuberculosis three to seven weeks following back surgery with ViBone viable bone matrix material.   On July 12, 2023, the CDC confirmed that both patients received ViBone lot #TDS22820.

44.    On July 13, 2023, Defendant Elutia issued a voluntary recall of its Viable Bone Matrix Products, which included ViBone after Defendant Elutia learned of post-surgical infections in patients treated with ViBone, including some patients who tested positive for tuberculosis.

45.    The recalled lot consisted of 50 units, including 43 units of ViBone, distributed to thirteen (13) healthcare facilities in seven (7) states, including University of Michigan Health-West in Wyoming, Michigan.

46.    The head of the Molecular Epidemiology and Outbreak Investigation Team, Division of Tuberculosis Elimination, for the CDC stated: "Begin empiric multidrug treatment for presumptive diagnosis of drug-susceptible TB disease for all patients who underwent surgery or dental procedures involving this product lot, even in the current absence of signs and symptoms of disease."

47.    Once Mycobacterium tuberculosis is introduced to the body, the bacteria must then proliferate within the new host for the host to develop disease.  When this bacterium is introduced in a surgical wound, the patient is already in an immunocompromised position, causing them to have an increased likelihood of developing tuberculosis, which can be fatal.

48.    Decedent is one of the patients who received the ViBone product from the recalled donor lot.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

**B.  Decedent Received the Contaminated ViBone and Died as a Result**

49.    Plaintiff incorporates by reference all other allegations of this Complaint as if fully set forth herein.

50.    Decedent underwent spine surgery on April 19, 2023 at University of Michigan Health-West in Wyoming, Michigan.

51.    Decedent's surgery included bone grafting, utilizing ViBone from Donor Lot Number TDS22820.

52.    Unbeknownst to Decedent, or her physicians at the time of her surgery, the ViBone implanted into Decedent was contaminated with tuberculosis.

53.    The ViBone product contained no adequate warning to Decedent, or her physicians, of the danger that she could contract tuberculosis if the ViBone product was used during surgery.

54.    The IFU statements about donor screening were not accurate.

55.    The IFU statements that ViBone qualified as an HCT/P was false.

56.    The IFU statements that donor screening complied with FDA regulations and AATB standards were false.

57.    Following her April 19, 2023 surgery, Decedent died on August 10, 2023 because of her exposure to tuberculosis.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

58.    Decedent's death was caused by the contaminated and recalled ViBone used in her spine surgery.

59.    As a substantial, direct and proximate result of the implantation of contaminated ViBone, Decedent died on August 10, 2023.

60.    As a substantial, direct and proximate result of the implantation of contaminated ViBone, Decedent sustained funeral and burial expenses.

61.    As a substantial, direct, and proximate result of the implantation of contaminated ViBone, Decedent sustained emotional distress, pain, and suffering before her death.

62.    As a substantial, direct, and proximate result of the implantation of contaminated ViBone, Decedent required extensive medical treatment before her death.

63.    Decedent would not have suffered and died from the effects of tuberculosis, had Defendants sold and distributed a product that was free from tuberculosis contamination.

**V.  <u>CAUSES OF ACTION</u>**

**<u>FIRST CAUSE OF ACTION</u>**
**Negligence Against Defendant Elutia**

64.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

65.    Defendant Elutia owed a duty to Decedent to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of ViBone into the stream of commerce. including a duty to assure that ViBone would not cause those who used it, including Decedent, to suffer adverse harmful effects.

66.    Defendant Elutia failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and distribution of ViBone.

67.    Defendant Elutia knew or reasonably should have known that those individuals who used the defective ViBone were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries and death which are permanent and lasting in nature, physical pain, mental anguish, and diminished enjoyment of life.

68.    Defendant Elutia was negligent in designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and sale of ViBone.   The negligence of Defendant Elutia, their agents, servants, and employees, included, but was not limited to, the following acts and/or omissions;

   a.    Designing, manufacturing, producing, creating, and/or promoting ViBone without adequately, sufficiently, or thoroughly testing the ViBone units to ensure they were free from contamination of communicable diseases, including but not limited to, tuberculosis;

b. Not conducting a sufficient quality control testing program to determine whether or not the subject ViBone was manufactured properly and was free from contamination or other defects making it unsafe for users of the product;

c. Failing to adequately and properly obtain and review complete donor medical history;

d. Failing to properly screen and select potential donors for donation when such had clear signs of infection;

e. Negligently failing to timely recall their dangerous and defective ViBone lots at the earliest date that it became known that certain lots of ViBone were, in fact, dangerous and defective;

f. Negligently manufacturing ViBone in a manner that was dangerous to those individuals who had ViBone transplanted into their bodies;

g. Negligently producing ViBone in a manner that was dangerous to those individuals who had it transplanted into their bodies;

h. Failing to warn individuals who were using the product of the risk of contracting tuberculosis;

i. Failing to follow good tissue practice requirements and good manufacturing practice;

j. Failing to determine as ineligible deceased donors who have a documented medical diagnosis of sepsis as discussed in the 2007 *Guidance for Industry: Eligibility Determination for Donor ql Human Cells, Tissues, and Cellular and Tissue- Based Products (HCT/Ps);*

k.   Negligently, recklessly and/or willfully made misrepresentation in its IFU concerning donor screening and following FDA and AATB standards;

l.   Negligently, recklessly and/or willfully misrepresented to Decedent and her doctors that ViBone has an HCT/P as set forth in the IFU;

m.   Failing to follow applicable industry standards; and

n.   All other acts of negligence and fault to be determined during discovery.

69.   Despite guidance from the FDA in 2007 and the prior outbreak of tuberculosis from one of its products in 2021 where the donor had a diagnosis of sepsis, Defendant Elutia continued to determine donors with a diagnosis of sepsis during their terminal hospitalization to be accepted for harvesting with disregard for the safety of others.

70.   Defendant Elutia knew or reasonably should have known that consumers, such as Decedent, would suffer foreseeable injury and death and be at increased risk of suffering an injury or death as a result of Defendant Elutia' s failure to exercise ordinary care, as set forth above.

71.   Defendant Elutia's negligence was the proximate and substantial cause of Decedent's death, emotional distress, pain, suffering, and economic loss.

72.   By reason of the foregoing, Defendant Elutia is liable to Plaintiff for Decedent's death, injuries, harm, damages, and economic and non-economic losses in an amount to be determined at trial.

Michigan Slip and Fall Lawyers, 3001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

**SECOND CAUSE OF ACTION**
**Strict Liability Against Defendant Elutia**

73.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

74.    Defendant Elutia is in the business of designing, manufacturing, supplying, selling, and placing into the stream of commerce certain goods, including ViBone.

75.    By placing ViBone into the stream of commerce, Defendant Elutia impliedly warranted that it was merchantable and fit and safe for its intended use.

76.    The ViBone placed into the stream of commerce by Defendant Elutia and implanted into Decedent was contaminated, leading those persons who received ViBone to be exposed to tuberculosis, including Decedent, and accordingly, was unreasonably dangerous, not fit, safe, or merchantable for its intended use.

77.    The contamination in the ViBone manufactured, supplied, and placed into the stream of commerce by Defendant Elutia was present at the time the ViBone units left Defendant Elutia's control and at the time it was implanted into Decedent as part of her spinal operation, it had not been substantially altered.

78.    Defendant Elutia breached the implied warranty for ViBone because it was contaminated, unmerchantable, and not fit for its intended purpose, resulting in personal injuries and death suffered by Decedent.

79.    Decedent was a foreseeable user of the ViBone designed, manufactured, and placed into the stream of commerce by Defendant Elutia.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

80.    Decedent reasonably expected ViBone to be free of bacterial contamination such as tuberculosis being before implanted into her body.

81.    By reason of the foregoing, Defendant Elutia is strictly liable to Plaintiff for Decedent's death, injuries, harm, damages, and economic and non-economic losses in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**Breach of Implied Warranty Against Defendant Elutia**

82.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

83.    Defendant Elutia is in the business of designing, manufacturing, supplying, selling, and placing into the stream of commerce certain goods, including ViBone.

84.    By placing ViBone into the stream of commerce, Defendant Elutia impliedly warranted that it was merchantable and fit and safe for its intended use.

85.    The ViBone placed into the stream of commerce by Defendant Elutia and implanted into Decedent was contaminated, leading those persons who received ViBone to become exposed to and/or to develop tuberculosis, including Decedent, and accordingly, was not fit, safe, or merchantable for its intended use.

86.    The contamination in the ViBone manufactured, supplied, and placed into the stream of commerce by Defendant Elutia was present at the time the ViBone units left Defendant Elutia's control and at the time it was implanted into Decedent as part of her spinal operation.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

87.    Defendant Elutia breached the implied warranty for ViBone because it was contaminated, unmerchantable, and not fit for its intended purpose, resulting in personal injuries and death suffered by Decedent.

88.    Decedent was a foreseeable user of the ViBone designed, manufactured, and placed into the stream of commerce by Defendant Elutia.

89.    Decedent reasonably expected the ViBone to be free from contamination prior to implantation into her body.

90.    By reason of the foregoing, Defendant Elutia is liable to Plaintiff for Decedent's death, injuries, harm, damages, and economic and non-economic losses in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty Against Defendant Elutia**

91.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

92.    At all times mentioned, Defendant Elutia expressly represented and warranted to Decedent and her agents and physicians, by and through statements made by Defendant Elutia and their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the public, that ViBone is safe, effective, fit, and proper for its intended use. Decedent and her physicians utilized ViBone relying upon these warranties.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

93.    Defendant Elutia further warranted that AATB standards were applied in terms of donor screening and selection.

94.    Defendant Elutia further warranted that donor eligibility was made in compliance with FDA regulations.

95.    Upon information and belief, Defendant Elutia breached the express warranties it made to its customers.

96.    In utilizing ViBone, Decedent relied on the skill, judgment, representation, and foregoing express warranties of Defendant Elutia.  These warranties and representations were false in that:

a.  ViBone was unsafe and unfit for its intended use;

b.  ViBone did not qualify as a Human Cellular and Tissue Based Product as represented by Defendant Elutia in its IFU;

c.  Defendant Elutia did not meet AATB standards with regard to donor selection;

d.  Defendant Elutia did not meet FDA standards with regard to donor selection;

e.  All other acts of negligence and fault to be determined during discovery.

97.    As a result of the abovementioned breach of express warranties by Defendant Elutia, Decedent suffered death, injuries, and damages as alleged herein.

## FIFTH CAUSE OF ACTION
### Gross Negligence Against Defendant Elutia

98.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

99.    Defendant Elutia's misconduct, as previously outlined herein, constituted a conscious disregard for the rights and safety of other persons, including Decedent, that had a great probability of causing substantial harm including, but not limited to, exposing Decedent and other recipients of ViBone to tuberculosis, a deadly infectious disease.

100.    Defendant Elutia engaged in conduct with respect to the contaminated ViBone unit alleged herein which was a legal cause of loss, damages, harm and death to Decedent, and which exposed Decedent and other recipients of the contaminated ViBone units to serious complications, including the diagnosis of tuberculosis and death.

101.    Defendant Elutia's actions and inactions leading to the contamination of the ViBone product were outrageous, willful, and wanton, and done with reckless disregard for the safety of Decedent.

102.    Defendant Elutia's outrageous, willful, wanton, and reckless conduct in disregard for the safety of Decedent was the proximate cause of Decedent's injuries, death, and damages.

103.    As a direct and proximate result of Defendant Elutia's outrageous, willful, wanton and reckless conduct in disregard of the safety of Decedent, the Decedent suffered injuries, death, and damages.

104.    The gross negligence of Defendant Elutia constitutes an exception to the limitation on damages set forth in MCL 600.2946a.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

**SIXTH CAUSE OF ACTION**
**Negligence Against Defendant DCI**

105.  Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

106.  Defendant DCI owed a duty to Decedent to exercise reasonable care in harvesting, procuring, processing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of human tissue into the stream of commerce, including a duty to assure that their human tissue which was used in the subject ViBone lot would not cause those who used it, including Decedent, to suffer adverse harmful effect.

107.  Defendant DCI failed to exercise reasonable care in the harvesting, procuring, processing, supplying, testing, quality assurance, quality control, sale and distribution of their human tissue product for use in ViBone.

108.  Defendant DCI knew or should have known that those individuals who were exposed to their contaminated human tissue used in ViBone were at risk for suffering harmful effects from it, including but not limited to, tuberculosis, as well as other severe injuries and death which are permanent and lasting in nature, physical pain, mental anguish, and diminished enjoyment of life.

109.  Defendant DCI was negligent in the harvesting, procuring, processing, supplying, testing, quality assurance, quality control sale, and distribution of their human tissue produce for use in ViBone.  The negligence of Defendant DCI, their agents, servants, and employees, included, but was not limited, to the following acts and/or omissions:

Michigan Slip and Fall Lawyers, 3000 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

a. Harvesting, procuring, processing and selling human tissue for use in ViBone without adequately, sufficiently, or thoroughly testing the human tissue to ensure that it was free from contamination of communicable diseases, including but not limited to, tuberculosis;

b. Not conducting a sufficient quality control testing program to determine whether or not the subject human tissue used in the aforementioned defective ViBone lot was properly harvested and was free from contaminations or other defects making it unsafe for users of the product;

c. Failing to adequately and properly obtain and review complete donor medical history;

d. Failing to adequately train its employees in the proper review of donor records, donor history, and body condition to assure the donor body was safe for harvesting;

e. Failing to send all necessary medical records in the donor file to Defendant Elutia's medical director to make an adequate donor eligibility determination;

f. Harvesting, procuring, processing, and selling human tissue for use in ViBone in a manner that was dangerous to those individuals who had ViBone implanted into their bodies;

g. Negligently and carelessly harvesting an unqualified and inadequately screened human donor;

h. Negligently failing to test the human donor tissue and/or bone;

i. Harvesting bone and/or tissue from a cadaver with clear signs and

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

symptoms of sepsis;

j.  Failing to follow AATB standards with regard to donor selection;

k.  Failing to warn individuals who were using their human tissue of the risks of contracting tuberculosis;

l.  All other acts of negligence and fault to be determined during discovery.

110.  Despite guidance from the FDA in 2007 and the prior outbreak of tuberculosis from one of its products in 2021 where the donor had a diagnosis of sepsis, Defendant DCI continued to determine donors with a diagnosis of sepsis during their terminal hospitalization to be accepted for harvesting with disregard for the safety of others.

111.  Defendant DCI knew or should have known that consumers, such as Decedent, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendant DCI's failure to exercise ordinary care, as set forth above.

112.  Defendant DCI's negligence was a proximate cause of Decedent's death, physical, mental, and emotional injuries, harm, and economic loss.

113.  By reason of the foregoing, Defendant DCI is liable to Plaintiff for Decedent's aforementioned death, injuries, harm, damages, and economic and non-economic losses in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Breach of Implied Warranty Against Defendant DCI

114.  Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

Michigan Slip and Fall Lawyers, 3001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

115. Defendant DCI is in the business of harvesting, procuring, processing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of human tissue into the stream of commerce.

116. By placing human tissue into the stream of commerce, Defendant DCI impliedly warranted that it was merchantable and fit and safe for its intended use.

117. The tuberculosis contaminated human tissue placed into the stream of commerce by Defendant DCI and implanted into Decedent was contaminated, leading those persons who received ViBone utilizing contaminated human tissue sold by Defendant DCI to become exposed to and/or to develop tuberculosis, including Decedent, and accordingly, was not fit, safe, or merchantable for its intended use.

118. The contamination in the human tissue harvested, recovered, supplied, sold, and placed into the stream of commerce by Defendant DCI was present at the time the human tissue left Defendant DCI's control and at the time it was implanted into Decedent as part of her spinal operation.

119. Defendant DCI breached the implied warranty for its human tissue because it was contaminated, unmerchantable, and not fit for its intended purpose, resulting in personal injuries and death suffered by Decedent.

120. Established medical and technological procedures existed at the time Defendant DCI harvested, recovered, supplied, and sold the tuberculosis contaminated human tissue that could have been employed pursuant to the standards of local medical

practice that would have detected the presence of an infection in the donor, including but not limited to, the detection of tuberculosis.

121.  Had established medical and technological procedures been employed, including but not limited to additional blood testing, Defendant DCI could and would have discovered that its human tissue was contaminated with tuberculosis and could have prevented its human tissue from being disseminated for use in surgical procedures.

122.  Decedent reasonably expected the human tissue harvested, recovered, supplied, sold and placed into the stream of commerce by Defendant DCI.

123.  Decedent was a foreseeable user and/or recipient of the human tissue harvested, recovered, supplied, sold and placed into the stream of commerce by Defendant DCI.

124.  By reason of the foregoing, Defendant DCI is liable to Plaintiff for Decedent's death, injuries, harm, damages, and economic and non-economic losses in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Breach of Express Warranty Against Defendant DCI**

125.  Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

126.  At all times mentioned, Defendant DCI expressly represented and warranted to Decedent and her agents and physicians, by and through statements made by Defendant DCI and their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the public, that its human tissue sold for use in ViBone was safe, effective, fit, and proper for its intended use.  Decedent and her physicians utilized ViBone and the human tissue used in ViBone relying upon these warranties.

127.  Defendant DCI further warranted that AATB standards were applied in terms of donor screening and selection.

128.  Defendant DCI further warranted that donor eligibility was made in compliance with FDA regulations.

129.  Upon information and belief, Defendant DCI breached the express warranties it made to its customers.

130.  In utilizing ViBone and the human tissue used in ViBone, Decedent relied on the skill, judgment, representation, and foregoing express warranties of Defendant DCI. These warranties and representations were false in that:

    a.  ViBone and the human tissue in ViBone was unsafe and unfit for its intended use;

    b.  Defendant DCI did not meet AATB standards with regard to donor selection;

    c.  Defendant DCI did not meet FDA standards with regard to donor

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48834 (248) 939-8130

selection;

    d.   All other acts of negligence and fault to be determined during discovery.

131.  As a result of the abovementioned breach of express warranties by Defendant DCI, Decedent suffered death, injuries, and damages as alleged herein.

## NINTH CAUSE OF ACTION
## Gross Negligence Against Defendant DCI

132.  Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

133.  Defendant DCI's misconduct, as previously outlined herein, constituted a conscious disregard for the rights and safety of other persons, including Decedent, that had a great probability of causing substantial harm including, but not limited to, exposing Decedent and other recipients of ViBone to tuberculosis, a deadly infectious disease.

134.  Defendant DCI engaged in conduct with respect to the contaminated ViBone unit alleged herein which was a legal cause of loss, damages, harm and death to Decedent, and which exposed Decedent and other recipients of the contaminated ViBone units to serious complications, including the diagnosis of tuberculosis and death.

135.  Defendant DCI's actions and inactions leading to the contamination of the ViBone product were outrageous, willful, and wanton, and done with reckless disregard for the safety of Decedent.

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

136.   Defendant DCI's outrageous, willful, wanton, and reckless conduct in disregard for the safety of Decedent was the proximate cause of Decedent's injuries, death, and damages.

137.  As a direct and proximate result of Defendant DCI's outrageous, willful, wanton and reckless conduct in disregard of the safety of Decedent, the Decedent suffered injuries, death, and damages.

138.  The gross negligence of Defendant DCI constitutes an exception to the limitation on damages set forth in MCL 600.2946a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief against Defendants, jointly and severally, as follows:

    a.   Compensatory damages, exclusive of interest and costs, in an amount to fully compensate Plaintiff for all past, present, and future pain and suffering;

    b.   Special damages, exclusive of interest and costs, in an amount to fully compensate Plaintiff for all of injuries and damages, both past and present;

    c.   Exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants who demonstrated a complete disregard for the general public and Decedent in amount sufficient to punish Defendants and deter future similar conduct;

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130

d.  Attorney's fees, expenses, and costs of this action;

e.  Pre-judgment and post-judgment interest in the maximum amount allowed by law: and

f.  Such further relief, including equitable relief, as this Court deems necessary, just, and proper

### **JURY DEMAND**

Plaintiff, by and through her attorneys, MICHIGAN SLIP AND FALL LAWYERS, hereby demands a jury trial in the above-referenced matter.

**Respectfully submitted,**

**Date:  August 8, 2025**            **BY:  */s/ Brandon Hewitt***

MICHIGAN SLIP AND FALL LAWYERS
Timothy Holland (P66218)
Jason Hodge (P84454)
Rick Houghton (P82056)
Brandon Hewitt (P70820)

*Attorneys For Plaintiff*
30101 Northwestern Hwy, Ste 150
Farmington Hills, MI 48334
(616) 447-8847
tholland@falllaw.com
jhodge@falllaw.com
rhoughton@falllaw.com
bhewitt@falllaw.com

Michigan Slip and Fall Lawyers, 30001 Northwestern Highway Suite 150, Farmington Hills, MI 48334 (248) 939-8130